IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                 Plaintiff,<br><br>vs.<br><br>JOSEPH HORES MEDINA,<br><br>                 Defendant. | Case No. 1:15-CR-00062 JNP<br><br>MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS<br><br>District Judge Jill N. Parrish |

## INTRODUCTION

Defendant Joseph Medina ("Mr. Medina") filed a Motion to Suppress on December 3, 2015. (Docket 17). That motion sought to suppress evidence discovered during the police searches of his person and vehicle on May 5, 2015. The court held an evidentiary hearing on January 20, 2016. The parties then briefed the motion and the court heard oral argument on June 16, 2016. After careful consideration of the record, relevant law and the parties' memoranda, the court DENIES Mr. Medina's motion to suppress for the reasons set forth below.

## FINDINGS OF FACT

Based upon a review of the record and the evidence presented during the evidentiary hearing, the court makes the following factual findings:

In February 2015, Detective Brandon Beck ("Agent Beck") received information from a confidential source that Mr. Medina was in possession of firearms or could be in possession of firearms, and was also selling illegal narcotics. He began to follow and watch Mr. Medina's activities and on March 18, he observed Mr. Medina taking pictures in West Ogden. Agent Beck was also monitoring Mr. Medina's Facebook postings and that same day he discovered that the

photos that had been taken while he had been watching Mr. Medina had been posted online. In one photo, Mr. Medina had his shirt lifted up showing a gun in his waistband.

On April 22, 2015, Agent Beck was watching Mr. Medina's home when he observed Christina Perez ("Ms. Perez"), Mr. Medina's girlfriend, carry a garbage bag to the trash can on the street. Agent Beck retrieved the garbage bag and took it to his office to search for evidence. He discovered several items of interest in the bag that included the following: (1) an orange lid with the name "loco" on it, which he knew to be Mr. Medina's nickname; (2) a plastic container with meth pipes and baggies with methamphetamine residue, which the lid fit; (3) several rounds of ammunition for 9mm and .22 caliber guns; and (4) an SD memory card. The SD card contained videos of what appeared to be drug use by Ms. Perez, photos of Mr. Medina and Ms. Perez's children and a video showing what appeared to be a Glock firearm case and Glock firearm with the audio of a male whose voice resembled Mr. Medina's. The video showing the firearm had a date stamp of March 15, 2015, three days prior to the Facebook post. Agent Beck determined that Mr. Medina was a convicted felon and thus not entitled to possess any firearm.

On April 27, 2015, Agent Beck prepared an affidavit in support of a search warrant seeking authorization to search Mr. Medina's residence and his person. In his affidavit, Agent Beck stated, "Your Affiant is asking for a search warrant for the entire premises, 3047 W 5500 S and the person of Joseph Hores Medina. The reason for a search warrant for Joseph Medina is because Your Affiant does have a photograph and has seen video footage of him possessing a firearm." That same day, Judge Hadley signed a warrant authorizing a search of the premises located at 3047 W 5500 S. Roy, Utah and "On the Person(s) of: Joseph Medina, 7-17-86, SSN [redacted], Hispanic male, 5'10" tall and 200 lbs, black hair and brown eyes." The warrant authorized a search for drugs, paraphernalia and firearms or weapons. The warrant did not

authorize the search of any of the five vehicles identified in the search warrant affidavit.

After receiving the search warrant, Agent Beck made a plan to detain Mr. Medina away from his home due to his concerns for the safety of officers and the other residents of the home, including children. Agent Beck enlisted the help of officers from the Roy Police Department to assist with the execution of the search warrant. As part of this process, these officers were briefed on Agent Beck's investigation of Mr. Medina. The officers did not want to risk getting into a shootout with Mr. Medina thereby endangering others in the home, so they determined that the best way to execute the search warrant on Mr. Medina's person was to isolate Mr. Medina when he left the home to attend a court hearing.

On May 5, 2015, Mr. Medina did not attend his scheduled court hearing. Police observed Mr. Medina exit the home several times over a time period of approximately two hours. Eventually, Mr. Medina left the home, entered a yellow Ford Mustang, and drove onto 3000 West in Roy. Mr. Medina had a suspended driver's license. Officer Brec Gresham ("Officer Gresham"), the school resource officer at Roy Junior High School, was assigned the task of stopping the yellow Mustang driven by Mr. Medina. He was driving a marked Roy City Police car. At 10:49 AM, while traveling on 2700 West, Officer Gresham initiated his lights, but the vehicle did not stop on the roadway. Mr. Medina drove about two blocks before he pulled the vehicle into a driveway and stopped. Because it was possible that Mr. Medina was carrying a gun, the officers drew their guns and ordered Mr. Medina out of his vehicle. Agent Beck assisted in handcuffing Mr. Medina as he exited the vehicle. Mr. Medina was then escorted away from his vehicle. At this point, another officer assisted Agent Beck in executing the search warrant for the search of Mr. Medina's person. The other officer conducted the search discovering a digital scale, $900 in cash, a police scanner and a red bandana, which were immediately turned over to

Agent Beck. Based on his training and experience, Agent Beck considered the digital scale to be drug paraphernalia used in the sale of narcotics. The red bandana was also significant to Agent Beck because it matched the colors of the Norteños street gang of which Mr. Medina was suspected to be a member. The discovery of these items, in light of the information already known to Agent Beck in the course of his investigation of Mr. Medina, led him to believe that there would be drugs in Mr. Medina's vehicle. After concluding the search of Mr. Medina's person, Agent Beck secured Mr. Medina in a police vehicle.

There is an absence of evidence in the record to show whether Agent Beck or the other officer conducting the search of Mr. Medina's person communicated the results of that search to the other officers at the scene. But in carrying out the stop and subsequent search of Mr. Medina, all of the officers were working closely together and operating in close proximity to one another.

After Mr. Medina was ordered out of his vehicle, Officer Gresham made contact with the homeowner into whose driveway Mr. Medina had parked. The homeowner indicated he did not know Mr. Medina nor did he know why he chose to pull into his driveway. Officer Gresham communicated to the other officers and detectives that the homeowner did not know Mr. Medina.

Officers Jason Vanderwarf ("Officer Vanderwarf") and Mark Krueger ("Officer Krueger") of the Roy City Police Department then began the process of impounding the vehicle. This process required the officers to take an inventory of all the items recovered from the vehicle. Almost immediately as they began this process, Officer Vanderwarf observed a pistol directly under the driver's side seat. He left the firearm in place without touching it and continued his examination into the center console where he discovered three baggies of suspected methamphetamine. Upon discovering these items, the officers decided to call CSI to photograph the items. After the photographs were taken, Agent Vanderwarf removed the firearm

and determined that it was loaded and had a high-capacity magazine. He also discovered another magazine under the driver's seat. Officer Vanderwarf was then called away to assist with executing the search warrant on Mr. Medina's home, and Officer Krueger continued with the inventory. He discovered, in the trunk area, another baggie of suspected meth and another firearm magazine.

## CONCLUSIONS OF LAW

Mr. Medina asserts that both the search of his person and the subsequent search of his vehicle were unlawful. Mr. Medina argues that the search of his person was unlawful because it was outside the scope of the warrant. With respect to the search of his vehicle, he asserts that the search of his vehicle was not authorized by the warrant obtained by the police and that it failed to fall within any of the exceptions to the warrant requirement.

To determine the lawfulness of the challenged searches, the court reviews the facts and circumstances objectively. "[T]he fact that [an] officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *Whren v. United States*, 517 U.S. 806, 813 (1996). Thus, if the court finds that the searches were valid under any one of the Government's proffered theories, it must deny Mr. Medina's motion. For the reasons that follow, the court holds that the warrant authorizing the search of Mr. Medina's person was lawfully exercised when police pulled Mr. Medina over and searched his person away from his home. The court further holds that following the search of Mr. Medina's person, the officers lawfully searched his vehicle under the *Carroll* Doctrine. Because the court holds that the search of Defendant's vehicle was lawful under the *Carroll* Doctrine, the court does not address the remaining alternative grounds proffered by the Government to justify conducting the search without a warrant.

## I. The search of Mr. Medina's person was authorized by the warrant.

The Fourth Amendment provides that "no warrant shall issue, but upon probable cause, supported by oath and affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. The search warrant at issue in this case specifically authorized the officers to search "On the person(s) of: . . . Joseph Hores Medina, 7-17-86, SSN [redacted], Hispanic male, 5'10" tall and 200 lbs, black hair and brown eyes." Thus, the warrant particularly described the person of Mr. Medina as a place to be searched regardless of his location at the time of the execution of the warrant. In his affidavit, Agent Beck stated, "Your Affiant is asking for a search warrant for the entire premises, 3047 W 5500 S and the person of Joseph Hores Medina. The reason for a search warrant for Joseph Medina is because Your Affiant does have a photograph and has seen video footage of him possessing a firearm."

Mr. Medina has failed to persuade the court that the scope of the warrant was exceeded in this case. Mr. Medina first argues that the Fourth Amendment warrant clause is directed at the searches of places, rather than the searches of persons. But this argument is simply not supported by history or case law. Warrants may be directed at persons and executed at a location other than the premises also authorized to be searched by the warrant. *See, e.g.*, *United States v. Baca*, 480 F.2d 199, 201–03 (10th Cir. 1973). Mr. Medina asserts that the police exceeded the scope of the warrant, citing several cases that involve the detention of occupants of premises when police execute a search warrant for such premises. Those cases, however, do not involve instances where officers lawfully requested and received authority to search a particular person. Had the warrant in this case failed to particularly describe the person of Mr. Medina as a place to be searched, his argument may have been persuasive. Similarly, had the command line of the warrant failed to authorize the search of Mr. Medina's person, the result may be different. *See*

*United States v. Young* 263 Fed. Appx. 710, 712, 714–16 (10th Cir. 2008) (unpublished opinion). But these are simply not the facts. The warrant did particularly describe Mr. Medina and expressly authorized the search of his person—separate and apart from the additional authorization to search his home. Because the search warrant authorized the search of Mr. Medina's person and was not limited to his premises, the court finds that the search of Mr. Medina's person was lawful.

      II.     **The search of the vehicle was proper under the *Carroll* Doctrine.**

Under the *Carroll* Doctrine, an automobile may be searched without a warrant if police have probable cause to believe the vehicle contains contraband or other evidence. *See California v. Acevedo*, 500 U.S. 565, 579-81 (1991). "Probable cause to search a vehicle is established if, under the totality of the circumstances, there is a fair probability that the car contains contraband or evidence." *United States v. Chavez*, 534 F.3d 1338, 1344 (10th Cir. 2008). If there is probable cause to believe a vehicle contains evidence of criminal activity, police officers are permitted to search "any area of the vehicle in which the evidence might be found." *Arizona v. Gant*, 556 U.S. 332, 347 (2009). Additionally, if there is probable cause to search the vehicle, the officer is permitted to search "all containers therein that might contain contraband.'" *Chavez*, 534 F.3d at 1345 (quoting *United States v. Bradford*, 423 F.3d 1149, 1160 (10th Cir. 2005)). Here, the court concludes that the facts and circumstances known to the officers, taken in their totality, provided probable cause to search Mr. Medina's vehicle for drugs and paraphernalia.

Leading up to the search of Mr. Medina's person, all law enforcement officers on the scene had been briefed on Mr. Medina's drug-related activities and were aware that a warrant had been issued to search Mr. Medina's home and person for drugs, paraphernalia and firearms. Further, upon searching Mr. Medina's person, the officers discovered a digital scale, $900 in

cash, a red bandana and a police scanner. Agent Beck testified that drug users typically don't weigh their drugs. Rather, in Agent Beck's training and experience, digital scales like the one discovered on Mr. Medina's person are used in the sale and distribution of drugs. In this light, the $900 in cash provided additional evidence consistent with the sale of illegal drugs because people do not typically carry such a large amount of cash on their person. The police scanner and gang related red bandana also provided additional indicia of illegal activity. Because these items were found on Mr. Medina's person just after he had been taken out of his vehicle, the totality of the circumstances provided Agent Beck with probable cause to believe that the vehicle may contain further evidence of drug paraphernalia or drugs.

Nonetheless, for the search to be valid under the *Carroll* Doctrine, the officers conducting the search of Mr. Medina's vehicle must have also known the information giving rise to probable cause to conduct the search. In *United States v. Shareef*, 100 F.3d 1491 (10th Cir. 1996), the Tenth Circuit addressed what is known as the collective knowledge rule. *Id.* at 1503–04. Under the rule, the court looks "to the knowledge of all the police involved in [the] criminal investigation" when "assessing the justification for an investigatory stop" or search. *Id.* at 1503. In *Shareef*, the Tenth Circuit acknowledged that it had only "applied the 'collective knowledge' rule [to cases where there has been] actual communication to the arresting officer of either facts or a conclusion constituting probable cause, or an arrest order." *Id.* The court then went on to evaluate a split of authority with respect to the limits of the application of the collective knowledge rule. *See id.* at 1504.

After reviewing these cases, the Tenth Circuit acknowledged, although ultimately deciding the case on other grounds, that it could "see the value in imputing knowledge among officers working closely together." *Id.* The Tenth Circuit continued, "[a] presumption of

8

communication often will reflect what has actually taken place and communication among officers during the exigencies of a stop or arrest may often be subtle or nonverbal." *Id.* For this reason, "[e]ven in the absence of evidence of communication among officers" the court in *Shareef* noted that "when officers act collectively it may sometimes be appropriate to look to their collective knowledge in determining whether they behaved reasonably." *Id.* "For example, where two officers are working closely together at the scene and each has observed suspicious circumstances that the other has not observed, even absent evidence of communication between the officers, we might be willing to aggregate their knowledge in deciding whether they behaved reasonably." *Id.* In a footnote following this example, the Tenth Circuit reasoned that in such circumstances it might be appropriate to treat the officers as one given the court's recognition that officers communicate their suspicions with both nonverbal and verbal cues. *Id.* at 1504 n.6.

Here, there is an absence of evidence in the record indicating whether Agent Beck or the officer assisting him with the search of Mr. Medina's person either communicated the findings of the search of Mr. Medina's person or ordered the search of the vehicle. Nonetheless, the record is clear that the officers were working closely together at the scene. All of the officers acted in concert in ordering Mr. Medina out of the vehicle and ensuring he was handcuffed to protect officer safety and searched pursuant to the warrant. Moreover, the record is also clear that the officers were communicating information regarding the homeowner's unfamiliarity with Mr. Medina. Further, the officers who searched the vehicle purported to impound and inventory the vehicle incident to Mr. Medina's arrest. That the officers understood that Mr. Medina was being arrested gives rise to an inference that they knew the search of his person had revealed evidence of possession of drug paraphernalia and distribution. Thus, while there is an absence of direct evidence to show that the officers who conducted the search of Mr. Medina's vehicle had

sufficient information to establish probable cause to search his vehicle, the court finds that the facts warrant an inference that the fruits of the search of Mr. Medina's person that established probable cause to search the vehicle were communicated to the officers who conducted the search—whether through verbal or nonverbal communication among the officers.

Accordingly, the court finds that the search of Mr. Medina's vehicle was supported by probable cause and was therefore valid under the *Carroll* doctrine.

## CONCLUSION

For the foregoing reasons the court DENIES Mr. Medina's motion to suppress (Docket 17).

DATED July 7, 2016.

Judge Jill N. Parrish
United States District Court Judge